## GAUVIN v. SMITH.
### No. 92.

Circuit Court of Appeals, Second Circuit.
Dec. 4, 1939.

Emery, Varney, Whittemore & Dix and Nichol M. Sandoe, all of New York City (Lucius E. Varney and Nichol M. Sandoe, both of New York City, of counsel), for defendant-appellant.

Paul Kolisch, of New York City, for complainant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is the usual patent suit for an injunction and accounting. The patent under consideration is U. S. Patent No. 1,783,-839, granted December 2, 1930, to the complainant Henri Gauvin for a roof simulating a thatched roof and yet avoiding the disadvantages attendant on that form of construction. The claims of the patent which are in issue are 1, 2, 3 and 4. The District Court held each of them valid and infringed by the defendant and entered an interlocutory decree in favor of the complainant-patentee for an injunction and ac-counting, from which the defendant has appealed.

The roof covering of the patented device is described in the specification as consisting "essentially of an envelope of impregnated paper or other fibrous material containing a quantity of a projecting brush material held in the envelope with suitable cementitious material as * * * more fully described in the accompanying specification and drawings."

In describing the envelope the specification states: "Asbestos paper impregnated with asphalt has been found to be a suitable material for the purpose. The envelope is preferably closed on three sides, and a suitable quantity of brush material, * * * is held within the envelope and projects outwardly therefrom. A variety of material may be used as brush material, such as straw, reed, fibre strand, metal strand or the like. * * * The brush material is held within the envelope with suitable cementitious material of a water proof character such as bitumen or asphaltum of a suitable consistency."

The specification goes on to say that the manner of constructing the roofing may be seen from a figure of the patent which shows a bottom sheet of the envelope conveniently consisting of asbestos paper saturated with asphalt, a layer of bitumen or asphaltum placed on top of the paper, brush material extending within the envelope and a second layer of asphaltum or bitumen placed on top of the brush material. It further states that the brush material is adapted to project a sufficient distance outwardly from the envelope to enable the brush material of successive shingles to overlap and thereby to produce the effect of a thatched roof.

The four claims in issue read as follows:

"1. As a new article of manufacture, a roof covering comprising an envelope, brush material held within the envelope and projecting outwardly therefrom, and a cementitious material within the envelope about the brush material.

"2. As a new article of manufacture, a roof covering comprising an envelope with impregnated paper, brush material therein, and a bituminous material within the envelope surrounding the brush material.

"3. As a new article of manufacture, a roof covering comprising an envelope coated on the inside with a water proof cemen-

titious material and a brush material held within the envelope, projecting therefrom.

"4. As a new article of manufacture, a roof covering comprising asbestos paper impregnated with asphalt, brush material held within the envelope projecting therefrom and asphalting material within the envelope about the brush material."

The complainant says in his brief that in the old-fashioned roof the mass of thatch fibres had to be thick enough to cause the water to drain along the fibres, and so off the roof, before penetrating to the roof boards underneath. He says that in his roofing unit reliance is placed solely on the overlapping water shedding flaps to make the roof water-tight and he adds that the relatively thin thatch fibre fringe of the patent in suit has a purely ornamental function. The aim of the complainant was to construct a water-tight roof having the picturesque appearance of the thatched roofs of the old country and in this he succeeded. His product also furnished a roof which had a sufficient covering of thatch to possess a high heat insulating quality. It was such an effective non-conductor of heat and cold as to render houses cooler in summer and warmer in winter than if thatch had not been used in its construction.

In spite of some commercial success which followed the patenting of Gauvin's thatched roof, we think it was not deserving of a patent in view of the prior art and especially in the light of U. S. Patents Nos. 1,494,609 and 1,494,610 to Simpson.

The first of these Simpson patents is for a roofing in which thatch is not to be used. Instead wires are embedded in a flexible waterproof envelope and project outwardly therefrom. The specification provides that: "The flaps of the base sheet may be secured together in any desired manner, as for example, by cement or by the application of heat, or pressure, or the elements may be molded in position during the manufacture of the base material." Watershedding flaps like those in the patent in suit are designed to be laid in overlapping courses. When so laid they are covered and concealed by a fringe of beads strung on the wires projecting from the envelope just as those of the patent in suit are covered by thatch. In both forms of roofing the fringe, whether of beads or of thatch, is ornamental and in Simpson's roofing is only employed for ornamental purposes.

In Simpson's Patent No. 1,494,610 the object of the invention is to produce a waterproof roofing having the appearance of thatch. The thatch instead of being laid in an envelope of asbestos paper impregnated with asphalt, so as to hold the fibres in place, is stitched upon wire cloth and as thus secured embedded in a shingle composed of suitable plastic waterproof and fireproof material. If anyone wished to use thatch for roofing it would seem to have been an obvious step to cement it to an envelope of asbestos paper already disclosed in the earlier Simpson patent as a mode of encasing the wires. It is to be remembered that the specification of the patent in suit not only provides for an ornamental roof covering of thatch but for the use of metal strands or the like (patent p. 1, 1.57) in the place of thatch. Whichever might be used, the mode of adhesion to the envelope was by impregnation with asphalt. In view of the teachings of the two Simpson patents we have described we cannot think that to take a step so obvious as to insert thatch in an asbestos envelope impregnated with asphalt or other cement, instead of stitching it to wire cloth and then embedding it in a shingle of suitable plastic material, required a degree of ingenuity sufficient to justify a patent. It will be said that Simpson never made a shingle as well adapted to the use of thatch as the one described in the patent in suit. This may be so, but there was too slight a demand for thatched roofs to stimulate manufacture. As soon as it arose, Simpson had disclosed enough to make the use of thatch in connection with plastic roofing a simple problem. In view of the foregoing we hold the patent void for lack of invention.

In addition to lack of validity the charge of contributory infringement by making and selling one or more elements of the patented combination with the intention of bringing about their use by others in an infringing combination has not been sustained.

After the cancellation of the license the defendant manufactured about sixty squares of roofing in February, March and early April, 1938, illustrated by complainant's Exhibit M. This form of thatch roofing was discontinued about April 10 of that year. Whether or not it infringed, the product was so slight and experimental that it has played no part in complainant's claim for damages.

The defendant next began the manufacture and sale of thatch in accordance with Exhibit N. In this form of manufacture the thatch is not impregnated with asphalt in order to make it adhere to the asbestos paper, but is placed in a stitching machine so as to fasten the reeds together and after being dipped in a chemical for fireproofing and dried the butt ends are dipped in asphalt. It is marketed in that form without furnishing any asbestos roofing paper. The builder who purchases it lays a strip of roofing paper on the roofing sheathing and nails it down. He then lays a strip of defendant's thatch material over the strip of asbestos paper and nails it down. Then a second strip of asbestos paper is laid with its lower edge overlapping the butt ends of the first strip of thatch. This second paper strip is then nailed down along its upper edge. Whereupon a second strip of thatch is laid over the second paper strip and nailed down. Additional strips are laid in the same manner.

The charge of contributory infringement is based on the theory that the butt ends of defendant's brush material· are manufactured and sold to be enclosed between two strips of paper which constitutes an envelope within the meaning of the claims and that since the butt ends of defendant's strips of thatch are coated with asphalt they are held within the envelope thereby. It is to be observed that in the defendant's strips of thatch the asphalt is used only to protect against decay. The reeds are kept in place by stitching and fastened to the asbestos paper and to the roof by nailing. There is but a thin coating of asphalt involving far less material and weight than are involved in the patented device. In the patent in suit it is said that: "the bituminous material within the envelope is preferably applied hot, and the envelope is pressed firmly against the brush material in the process of manufacturing, to thereby thoroughly impregnate the brush material within the envelope and firmly hold it in position." The defendant neither makes nor contributes to making any such product.

When adopting the form of assembling the thatch shown in Exhibit N the defendant uses a stitching process as foreshadowed in the Simpson Patent No. 1,492,-610 and when coating the butts in asphalt as a preservative he does something long known to the art. U. S. Patent No. 99,-304 to Foster. Defendant's thatch lacks an element present in all the claims, namely, a cementitous or bituminous or asphalting material to hold the mass of fibres within an envelope. Consequently his stitched thatch dipped in asphalt at the butt ends did not contribute to the infringement.

The decree is reversed with directions to dismiss the bill.

L. HAND, Circuit Judge, concurs on the ground of non-infringement.